CJ-17-2966
prince

FILED IN DISTRICT COURT
OKLAHOMA COUNTY

MAY 23 2017

RICK WARREN
COURT CLERK
40_____



IN THE DISTRICT COURT OF OKLAHOMA COUNTY
STATE OF OKLAHOMA

GEORGE ANDREW MORGAN,

    Plaintiff,

vs.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

    Defendant.

Case No. **CJ-2017-2966**

## PETITION

COMES NOW Plaintiff, George Andrew Morgan ("Morgan"), and for his cause of action against Defendant, State Farm Mutual Automobile Insurance Company ("State Farm"), alleges and states:

1. That Plaintiff Morgan, at all materials times hereto, was State Farm's insured and is a resident of Oklahoma County, Oklahoma.

2. That Defendant State Farm is a foreign insurance company doing business in Oklahoma.

3. That venue and jurisdiction are proper with this Court.

4. That at all times material hereto Plaintiff Morgan was insured under a policy of automobile insurance with Defendant State Farm with insurance coverage, including protection for liability he may have as the result of an automobile accident.

5. That Plaintiff Morgan was involved in an automobile accident wherein Jesse Atkins (hereinafter "Atkins") was severely injured with medical bills in the hundreds of thousands of dollars.

6. That at the time of the accident, the automobile insurance coverage with Defendant State Farm was in full force and effect.

7. That it was the duty of Defendant State Farm to ensure that all claims that are known, or should have been known, against the insured are extinguished, including liens and/or subrogation claims.

EXHIBIT

1

8. That State Farm was on actual notice there was a workers' compensation insurance carrier (New York Marine and General Insurance, hereinafter "New York Marine")involved which was required to pay all bills and liens.

9. That New York Marine had a subrogation right as a matter of law.

10. That the State Farm adjuster knew or should have known of the subrogation right as a matter of law.

11. That Defendant State Farm was in actual receipt of the workers' compensation court's Order requiring New York Marine to pay all medical bills arising out of the underlying accident.

12. That Defendant State Farm effectuated a settlement with Atkins and failed to extinguish a known right of subrogation by New York Marine.

13. That at the time Defendant State Farm received notice of New York Marine's subrogation rights, the settlement draft had not been deposited.

14. That Defendant State Farm had approximately two weeks from the time it was on actual notice of New York Marine's involvement to issue a stop payment on the settlement check in order to protect New York Marine's right of subrogation, therefore, protecting its insured, Mr. Morgan.

15. That Defendant State Farm did not issue the stop payment on the settlement draft, and instead, its adjuster decided to do nothing leaving Plaintiff Morgan exposed to hundreds of thousands of dollars in excess of his insurance policy limits.

16. That the Defendant State Farm adjuster disregarded New York Marine's right of subrogation, thus, exposing Plaintiff Morgan to that subrogation right which was in excess of his insurance policy limits.

17. That Defendant State Farm settled Atkins' claims without New York Marine's knowledge or consent.

18. That at the time it first received notice of New York Marine's involvement, State Farm never communicated with Plaintiff Morgan regarding the subrogation claim that existed nor that such claim may be pursued against him in the future.

19. That the first time Plaintiff Morgan was made aware there were additional claims pending against him that had not been protected by Defendant State Farm was when he was sued by New York Marine in the District Court of Garfield County, Case No. CJ-2011-188.

20. That Defendant State Farm hired Bill Molinsky ("State Farm's Lawyer" and/or "Molinsky") to defend Plaintiff Morgan in the lawsuit filed by New York Marine.

21. That Defendant State Farm's lawyer, Molinsky, is a lawyer who is considered "panel counsel" for State Farm and is a lawyer hired routinely by State Farm.

22. That Defendant State Farm paid Molinsky's legal bills and expenses in the case filed by New York Marine against Plaintiff Morgan.

23. That Defendant State Farm and its lawyer directed and controlled the defense of the litigation filed by New York Marine against Plaintiff Morgan.

24. That at the time that Defendant State Farm and its lawyers were purportedly representing the interest of its insured, in reality, the lawyers were trying to protect State Farm from its expected exposure to a bad faith claim arising out of its handling of this matter. (See email of Thursday February 13, 2014, attached hereto as Exhibit 1)

25. The legal and factual issues between Morgan, State Farm and New York Marine, including notice of New York Marine's subrogation interest, settlement and release of claims against Morgan, and damages were all tried to the Garfield County jury in Case No. CJ-2011-188.

26. Defendant State Farm defended the litigation on the basis that it did not know and should not have reasonably known that a workers' compensation claim was filed before the agreed upon settlement was paid and before the release had been signed. (See Jury Instruction Nos. 19 and 30, attached hereto as Exhibit 2 and Exhibit 3; along with the Verdict Form, attached hereto as Exhibit 4.)

3

27. That the jury evaluated the evidence and the defenses claimed by Defendant State Farm as set forth in paragraph 25 above and found against State Farm on these issues and ultimately entered a verdict against State Farm's insured, Plaintiff Morgan.

28. That an excess verdict was entered against State Farm's insured, Plaintiff Morgan, in the amount of $844,865.89. (See Verdict Form, attached hereto as Exhibit 4.)

29. That following the trial, State Farm's lawyers interviewed jurors. State Farm learned and documented in its files that the jurors concluded:

   a.   State Farm was trying to rush the settlement;

   b.   State Farm should have known better because they [State Farm] knew about the Order before the Release was signed;

   c.   Feldman [State Farm's adjuster] looked like a liar; and,

   d.   Feldman [State Farm's adjuster] was like a Wall Street guy who got caught with his hand in the cookie jar.

30. That shortly after the verdict, Defendant State Farm hired another lawyer, Galen Brittingham, to represent/protect its interest, devise strategy, and to assist in the appeal along with Molinsky.

31. That Defendant State Farm exhausted all appellate remedies.

32. That as a matter of fact and as a matter of law, the trial court, the jury and the appellate court concluded:

   a.   The insurance company, as the agent of the insured, is in control of how the clam will be disposed (See Jury Instruction No. 20, attached hereto as Exhibit 5);

   b.   That Defendant State Farm's settlement with Atkins did not extinguish New York Marine's right of subrogation and claims against Plaintiff Morgan;

   c.   That Defendant State Farm and Atkins agreed to a settlement without New York Marine's knowledge or consent;

   d.   That Defendant State Farm knew or should have reasonably known that a workers' compensation claim was filed before the agreed upon settlement was paid and before the release had been signed;

   e.   That the jury was accurately instructed to date the release as of the date it was signed and not the earlier date of when Atkins agreed to the settlement; and,

4

    f.     That New York Marine had a valid and lawful right of subrogation for the entire verdict amount of $844.865.89.

33.  That the Oklahoma Court of Appeals affirmed the trial court's legal decisions, instructions to the jury and the jury's verdict against State Farm's insured, Mr. Morgan. (See Court of Appeals Opinion, attached hereto as Exhibit 6)

34.  That the Oklahoma Court of Appeals found that the evidence at trial showed that State Farm was made aware of the workers' compensation claim and that the workers compensation carrier's interest arose more than 30 days before State Farm engaged in any settlement discussions with the injured third party. (See Exhibit 6)

35.  That State Farm's Petition for Certiorari to the Oklahoma Supreme Court was denied.  (See Order Denying Petition for Certiorari, attached hereto as Exhibit 7)

36.  That the appellate process was exhausted, and the judgment became final on March 23, 2017, when the Oklahoma Supreme Court issued its Mandate affirming the judgment. (See Mandate, attached hereto as Exhibit 8).

37. That Defendant State Farm is precluded and/or estopped from re-litigating the same issues it previously litigated in the underlying action, as previously addressed by the trial court and affirmed by the Oklahoma Supreme Court.

38.  That Plaintiff Morgan did not cause or contribute to State Farm's failure to fulfill its duty to ensure this subrogation claim of New York Marine was protected.

39.  That the excess judgment could have, and should have, been resolved when State Farm received notice of the overlooked liens and the involvement of New York Marine.

40.  That Defendant State Farm documented in its claim file, prior to trial and exposing its insured to the excess judgment, that "..we could have protected the lien...."

41.  That Defendant State Farm owed a duty of good faith to Plaintiff Morgan in accordance with Oklahoma law.

42. That Defendant State Farm's duty to Plaintiff Morgan required State Farm to consult him regarding requests and potential impact of settlement discussions.

43. That Defendant State Farm's duty to Plaintiff Morgan required State Farm to timely and adequately inform him of the progress of settlement negotiations.

44. That Defendant State Farm's duty to Plaintiff Morgan required State Farm to act in a diligent manner in relation to settlement of claims being made against him.

45. That Defendant State Farm's duty to Plaintiff Morgan required State Farm to, at the very least, develop a strategy to protect him rather than leave him hanging out for his financial life.

46. That Defendant State Farm's duty to Plaintiff Morgan required State Farm to protect him from a potential excess liability.

47. That Defendant State Farm's duty to Plaintiff Morgan required State Farm to fully and thoroughly investigate and protect him from claims against him.

48. That Defendant State Farm failed to fulfill its duty of good faith owed to Plaintiff Morgan.

49. That Defendant State Farm breached its insurance contract with Plaintiff Morgan.

50. That Defendant State Farm's acts and omissions with regard to the handling of the claims against Plaintiff Morgan rise to the level of a breach of the duty of good faith owed to him.

51. That as a result of Defendant State Farm's breach of the duty of good faith, a claim was made against Plaintiff Morgan; a lawsuit was filed against him; and then after a trial, a judgment was obtained against him in the amount of $844,865.89.

52. That the conduct of Defendant State Farm is the direct cause of the verdict against Plaintiff Morgan and the financial circumstances that are now his reality.

53. That the total judgment is currently in the approximate amount of $993,038.68, which includes pre- and post-judgment interest, and is accruing interest daily.

54. That Defendant State Farm continues to refuse to satisfy the excess judgment on behalf Plaintiff Morgan.

55. That as a result of the conduct of Defendant State Farm, which continues to this day, Plaintiff Morgan has been damaged and seeks all damages allowed by law and supported by the evidence, including financial loss, embarrassment, mental and emotional damages.

56. That the conduct of Defendant State Farm was such that it acted, at the very least, in reckless disregard for the rights of Plaintiff Morgan and, as such, may be liable for punitive damages.

WHEREFORE, Plaintiff, George Andrew Morgan, now prays that judgment be rendered on his behalf and against Defendant in a sum in excess of $75,000, as and for actual damages, and in a sum in excess of $75,000, as and for punitive damages, plus all costs incurred in connection with the prosecution of this action, together with all other relief this Court deems just and proper.

DURBIN, LARIMORE & BIALICK

By:

Mark E. Bialick, OBA #771
R. Ryan Deligans, OBA #19793
920 North Harvey
Oklahoma City, OK 73102-2610
Telephone: (405) 235-9584
Facsimile: (405) 235-0551
E-Mail: dlb@dlb.net
Attorneys for Plaintiff

**JURY TRIAL DEMANDED**
**ATTORNEY LIEN CLAIMED**

9998.0197\#17477562v1 <OKC> -Petition

**Braden Land**

| | |
|---|---|
| **From:** | Naureen Hubbard <nhubbard@molinskylaw.com> |
| **Sent:** | Thursday, February 13, 2014 2:45 PM |
| **To:** | 'David Sepulveda' |
| **Subject:** | RE: synopsis |

Totally makes sense. His participation has always been limited to just approving documents and strategy. That way we're covering our bases in the bad faith department. And that way he can't argue that State Farm should pay him for the work he's done on this case.

Naureen Hubbard
Attorney at Law
Molinsky Law Firm, P.C.
609 South Kelly Avenue, Suite A-2
Edmond, Oklahoma 73003
(405) 844-1200 \ (405) 844-1204 FAX
www.molinskylaw.com

NOTICE: This E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521, is confidential and may be legally privileged. If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. Please reply to the sender that you have received the message in error, then delete it. Thank you for your cooperation in this matter.

**From:** David Sepulveda [mailto:david.sepulveda            om]
**Sent:** Thursday, February 13, 2014 2:39 PM
**To:** Naureen Hubbard
**Subject:** RE: synopsis

OK..again, Chad should not tell you how to re write it or how to write it for him. He can provide commentary some items that may be contradictory or flat out wrong (hope that made sense)

**From:** Naureen Hubbard [mailto:nhubbard@molinskylaw.com]
**Sent:** Thursday, February 13, 2014 2:37 PM
**To:** David Sepulveda
**Subject:** RE: synopsis

Got the edited letter and made the revisions to my draft.

Naureen Hubbard
Attorney at Law
Molinsky Law Firm, P.C.
609 South Kelly Avenue, Suite A-2
Edmond, Oklahoma 73003
(405) 844-1200 \ (405) 844-1204 FAX
www.molinskylaw.com

NOTICE: This E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521, is confidential and may be legally privileged. If you are not the intended recipient, you are hereby notified

1


EXHIBIT
1

Instruction No. 19

## NOTICE

If you find that neither George Morgan nor his automobile insurance carrier were aware that Jesse Atkins had filed a worker's compensation claim before the total amount of the agreed-upon settlement was paid to Jesse Atkins and the release was signed by Jesse Atkins, then New York Marine's claims against George Morgan are extinguished.

EXHIBIT
2

Instruction No. _30_

## Verdict Form for Defendant—Directions

If you find that neither George Morgan nor his automobile liability insurance company knew or reasonably should have known that Jesse Atkins had filed a worker's compensation claim before: 1. the agreed upon settlement was paid; and 2. before the release had been signed you shall find in favor of George Morgan.

If you so find, you shall utilize the verdict form for defendant.



EXHIBIT
3



*102164727*

### VERDICT FORM, FOR PLAINTIFF

## IN THE DISTRICT COURT OF GARFIELD COUNTY, OKLA.
## STATE OF OKLAHOMA

FILED
GARFIELD COUNTY, OKLA.

FEB 28 2014

MARGARET F. JONES
COURT CLERK
BY _____
DEPUTY COURT CLERK

New York Marine and General )
Company, as Subrogee for Kansas )
Building Industry Worker's )
Compensation Fund, )
                              Plaintiff, )
vs. )                                        Case No. CJ-2011-188
)
George Andrew Morgan, 300 Club )
Inc., an Oklahoma Corporation and )
Olli, Inc., an Oklahoma Corporation, )
)
                              Defendants. )

### VERDICT FORM

We, the jury, empaneled and sworn in this action, do, upon our oaths, find in favor of the Plaintiff New York Marine and General Insurance Company, as Subrogee for Kansas Building Industry Worker's Compensation Fund and fix the dollar amount of their damages in the sum of $ 844,865.89 _____.

1. We do ___ do not _✓_ (Check One) find the 300 Club Inc. concurrently caused the injuries to Jesse Atkins.

2. We do ___ do not _✓_ (Check One) find Olli, Inc. concurrently caused the injuries to Jesse Atkins.

_Denin Jascowski_
Foreman

EXHIBIT
4

Instruction No. 20

## INSURER AS AGENT OF INSURED

When dealing with a liability claim, a liability insurance company acts on behalf of its insured. The insurance company, as agent of the insured, is in control of how the claim will be disposed and has the authority to determine whether settlements should be accepted or rejected.



FILED
COURT OF CIVIL APPEALS
STATE OF OKLAHOMA

JUN 1 0 2016

NOT FOR OFFICIAL PUBLICATION   MICHAEL S. RICHIE
CLERK

IN THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA

DIVISION I

| | | |
|---|---|---|
| NEW YORK MARINE and GENERAL INSURANCE COMPANY, as Subrogee for KANSAS BUILDING INDUSTRY WORKER'S COMPENSATION FUND, | ) ) ) ) | |
| Plaintiff/Appellee, | ) | |
| vs. | ) ) | Case No. 113,008 |
| | ) | |
| GEORGE ANDREW MORGAN, | ) ) | |
| Defendant/Appellant, | ) ) | |
| 300 CLUB, INC. and OLLI, INC., | ) ) | |
| Defendants. | ) | |

APPEAL FROM THE DISTRICT COURT OF GARFIELD COUNTY, OKLAHOMA

HONORABLE PAUL K. WOODWARD, JUDGE

### AFFIRMED

Tim N. Cheek,
D. Todd Riddles,
Gregory D. Winningham,
Tyler J. Coble,
CHEEK LAW FIRM,
Oklahoma City, Oklahoma,
and
Clint A. Claypole,
FIELD, TROJAN, LONG & CLAYPOLE, P.C.,
Enid, Oklahoma,                                    For Plaintiff/Appellee,


EXHIBIT
6

Bill Molinsky,
Lisa McLaughlin-Molinski,
Molinski Law Firm, P.C.,
Edmond, Oklahoma,
and
Chad N. Davis,
Enid, Oklahoma,                                        For Defendant/Appellant

Opinion by Bay Mitchell, Judge:

¶1     This appeal arises out of a jury verdict in favor of Plaintiff/Appellee New York

Marine and General Insurance Company ("NY Marine"), as Subrogee for Kansas Building

Industry Worker's Compensation Fund ("the Fund").   NY Marine brought suit against

Defendant/Appellant George Andrew Morgan ("Morgan") seeking to recover, via its

subrogation claim under Kansas law, worker's compensation benefits paid to the

employee of its insured who was injured by Morgan.   Morgan presents several

propositions of error on appeal.  Primarily, Morgan argues the trial court erred by

allowing NY Marine's subrogation claim to go to the jury because NY Marine did not

have a subrogation claim as a matter of Kansas law or, alternatively, the release signed

by the injured party, Jesse Atkins, barred NY Marine's subrogation claim as a matter of

Kansas law.   Morgan's additional propositions of error are ancillary to this primary

issue.  Morgan also alleges:  (1) even if NY Marine had a subrogation claim against

Morgan, such claim was limited to the amount of the settlement between Morgan and

Jesse Atkins; (2) the trial court erred when it provided confusing and incorrect jury

2

instructions; (3) the trial court abused its discretion in refusing to continue the trial to allow Morgan the necessary time to compel the testimony of a witness vital to his defense that NY Marine was bound by the settlement; (4) the trial court failed to offset the judgment by the amount of the settlement proceeds of the joint tortfeasors; and (5) the trial court abused its discretion in failing to waive or reduce the amount of the appeal bond.

## BACKGROUND

¶2    Morgan negligently caused injury to Jesse Atkins ("Atkins") whose employer, Webcon, had worker's compensation insurance through the Fund.  NY Marine is the reinsurer for the Fund.  Atkins, a Kansas resident, was in Enid for a job and was seriously injured when Morgan, who was admittedly driving under the influence of alcohol, hit Atkins with his vehicle while Atkins was walking from a bar to his hotel.  The incident occurred sometime after 2:00 a.m. on June 16, 2009.  At trial, Morgan testified he had been drinking and socializing at two bars in Enid owned by Defendants 300 Club, Inc. and Oili, Inc (collectively "the bars").  Prior to trial, NY Marine settled with the bars for an undisclosed amount.

¶3    Following his injuries, Atkins obtained legal counsel in Kansas, Matthew Bretz ("Attorney Bretz") and filed a worker's compensation claim in Kansas.  On February 18, 2010, a preliminary hearing was held in front of the Kansas Division of Workers Compensation to make an initial determination whether Atkins' injuries were

3

compensable under Kansas' workers compensation act (the "Act"), 44 K.S.A. Art. 5. The Fund argued Atkins was outside the scope of his employment when he was injured, but the administrative law judge ("ALJ") hearing the case entered a preliminary order February 24, 2010 ordering the Fund to provide Atkins with worker's compensation benefits ("the Preliminary Order"). The Fund began making payments pursuant to the Preliminary Order April 23, 2010. Following judgment in this action, the ALJ entered a final order finding Atkins' injuries were compensable under the Act. An appellate panel of the Kansas worker's compensation court later reversed the ALJ and ruled Atkins' injuries were not compensable. Atkins appealed that decision, and the case is still pending before the Kansas Court of Appeals.

¶4     On February 19, 2010 Attorney Bretz also contacted State Farm Insurance ("State Farm") on Atkins' behalf. State Farm carried the auto liability policy for Morgan. State Farm promptly offered to tender the policy limits of $100,000 to Atkins in exchange for a full release of any claims Atkins may have had against Morgan. Attorney Bretz accepted State Farm's offer in a letter dated March 9, 2010. On March 30, 2010 State Farm issued a check payable to Atkins and the Kansas Health Policy Authority and the Oklahoma Healthcare Authority, which both had statutory Medicaid liens. The letter transmitting the check included a full release to be signed by Atkins and stated that the check was provided "with the agreement that it will not be cashed until the release has been signed and returned. . . ."

4

¶5     Testimony at trial showed neither State Farm nor Morgan knew of Atkins' worker's compensation claim in Kansas at the time the settlement between State Farm/Morgan and Atkins was negotiated. Whether State Farm or Morgan knew about the worker's compensation claim before the settlement was completed was hotly contested by the parties. It was Morgan's position that the settlement was concluded either March 9, 2010 (when Attorney Bretz accepted State Farm's offer) or, at the latest, March 30, 2010 (when the check was mailed to Atkins). NY Marine maintained the settlement was not final until the release was signed by Atkins and returned to State Farm April 21, 2010.[1]

¶6     To further complicate matters, evidence showed State Farm was made aware of Atkins' worker's compensation claim on April 6, 2010 when the State Farm adjuster learned of a hospital lien which Attorney Bretz had not informed him about. Attorney Bretz responded to the adjuster's concerns and told him not to worry about the additional lien because Atkins' medical expenses were being covered by worker's compensation payments being made pursuant to the Preliminary Order dated February

---

[1] The release itself was undated. There were conflicting positions about when Atkins signed the release which had fax transmittal time stamps showing it was faxed to Atkins at a rehabilitation center where he was receiving treatment on the morning of April 20, 2010 and was then faxed again later that same afternoon. Morgan argued the fax time stamps did not show when the release was signed; they only showed when it was returned to State Farm, which both parties agreed was April 20, 2010. Because the letter from State Farm transmitting the check provided that the check was included with the understanding that it would not be cashed until the release had been both signed and returned, we find the resolution of this disagreement unnecessary. All parties agree State Farm received the signed release April 21, 2010.

24, 2010. In support of his statement, Attorney Bretz faxed the adjuster a copy of the Preliminary Order.

¶7    Following the presentation of NY Marine's case, Morgan moved for a directed verdict, arguing NY Marine did not have a subrogation claim against him because there was no final order determining compensability under the Act and NY Marine was bound by Atkins' release, which the trial court denied.  At the close of all the evidence, the case was submitted to the jury which returned a verdict in NY Marine's favor in the amount of $844,865.89.  The jury also found that the bars were not concurrently liable for Atkins' injuries.  Morgan filed a motion for judgment notwithstanding the verdict ("motion JNOV"), motion for remittitur, and motion for new trial (collectively, "the post-trial motions"), all of which were denied by the trial court.

I.    **NY MARINE HAD A VALID SUBROGATION CLAIM AND THE JURY WAS INSTRUCTED ACCORDINGLY**

¶8    Determining whether NY Marine had a valid subrogation claim against Morgan under Kansas law puts this Court in the unenviable position of answering a question of Kansas law which no Kansas court has yet decided.[2]  As accurately described in one

_____

    [2]  At trial the parties agreed that Kansas law applied to determine whether NY Marine had a valid subrogation claim as Atkins filed for worker's compensation in Kansas. Additionally, "[w]hen... workers' compensation benefits are claimed in one state for an accident which occurred in another, the law generally states that the question of whether and to what extent the employer or its insurer is entitled to subrogation or reimbursement is to be determined according to the provisions of the workers' compensation law under which the compensation for the employee's injury was paid." *Langston v. Hayden*, 866 S.W.2d 82, 85 (Mo. Ct. App. 1994) (citing 82 Am. Jur.2d *Worker's*
(continued...)

influential treatise, "[w]orkers' compensation subrogation . . . is a complicated and confusing area of law. . . . [T]he unwary should not venture in these waters." 16 COUCH ON INSURANCE §225:143 (3d ed. 2015) (footnotes and internal quotations omitted).

¶9   "An employer's right to subrogation is . . . a statutory right granted by the legislature.  Kansas courts have consistently held that the extent and nature of the subrogation rights of an employer under the workers compensation statutes are matters for legislative determination." *Maas v. Huxtable & Assoc., Inc.*, 929 P.2d 780, 784 (Kan. Ct. App. 1996).  This issue presents a question of law which we review *de novo. Nell Acquisition v. Wingrod Investment Corp.*, 1996 OK 125, ¶5, 932 P.2d 1100. "An appellate court claims for itself plenary, independent and non-deferential authority to re-examine a trial court's legal rulings." *Id.* at n. 1.

### A.  The Third-Party Tort Action Statute - K.S.A. 44-504a

¶10   To resolve this question, we first examine NY Marine's subrogation rights under the Third-Party Tort Action statute, K.S.A. 44-504, which provides that when "the injury . . . for which compensation is payable under the workers compensation act was caused under circumstances creating a legal liability against" a third-party, the employee is allowed to take compensation under the Act and also pursue a tort action against the third-party.  If the injured worker does not pursue an action against the third-party

---

[2] (...continued)
*Compensation §455 (1992); Restatement (Second) of Conflict of Laws §185 (1971)).*

7

within one year of the date of injury, "any cause of action in tort which the worker . . . may have" against the third-party is "assign[ed]" to the employer.[3] *Id.* 44-504(c). In the event the injured worker pursues an action against the third-party and obtains recovery in the form of "judgment, settlement or otherwise, the employer shall be subrogated to the extent of the compensation and medical aid provided by the employer to the date of such recovery and shall have a lien therefor against the entire amount of such recovery" excluding recovery for loss of consortium. K.S.A. 44-504(b). "The [Kansas] legislature's intent in enacting [K.S.A.] 44-504 was two-fold: (1) to preserve an injured worker's claim against third-party tortfeasors and (2) to prevent double recoveries by insured workers." *Edwards v. Anderson Engineering, Inc.*, 166 P.3d 1047, 1051-52 (Kan. 2007) (internal citations and quotations omitted).

¶11   Morgan argues that the out-of-court settlement between him and Atkins constitutes an "action" under K.S.A. 44-504(b) such that no cause of action was assigned to the employer (or the insurer pursuant to K.S.A. 44-532(a)) under K.S.A. 44-504(c). NY Marine argues the statute requires a lawsuit to be filed and that an out-of-court settlement does not qualify as an "action." Certainly, K.S.A. 44-504 contemplates that the injured employee will actually file a lawsuit but also suggests less formal dispute resolution is permitted. *Compare* K.S.A. 44-504(a) ("[T]he injured worker . . .

---

[3]   By virtue of K.S.A. 44-532(a), an employer's workers' compensation insurer shall be subrogated to all of the rights and duties of the employer if the insurer is the party paying compensation.

shall have the right to . . . pursue a remedy by proper action in a court of competent jurisdiction . . .) *with* K.S.A. 44-504(b) ("In the event of recovery . . . by the injured worker . . . by judgment, settlement, or otherwise . . . ). Additionally, our review of Kansas case law revealed at least one scenario where an injured worker's surviving spouse settled out-of-court with the third-party tortfeasor. *Jerby v. Tuck Ins. Exchange*, 138 P.3d 359, 359 (Kan. Ct. App. 2006) (surviving spouse and children of injured worker received workers compensation benefits and settled out of court with third-party tortfeasor and later brought declaratory judgment action to determine how much of their settlement was subject to the statutory lien of the workers compensation insurance carrier). While we agree with Morgan that an out-of-court settlement can qualify as an action within the meaning of K.S.A. 44-504, or, at the very least, extinguish an injured worker's cause of action against the third-party tortfeasor, the effect of such an out-of-court settlement on the subrogation rights of the employer (or its insurance carrier) is a more difficult issue to resolve, especially under the particular facts of this case.

¶12   As NY Marine deftly pointed out in its appellate response brief, in the ordinary case (that is one in which all parties were aware of the settlement and had the opportunity to participate), if an injured worker settled out-of-court with the third-party tortfeasor but the employer/insurer later filed suit under K.S.A. 44-504(c), the settlement would also bar the employer/insurer's claim. *Cf. Farmers Ins. Co. v. Farm Bureau Mutual Ins. Co.*, 608 P.2d 923, 928 (Kan. 1980) (subrogated insurer bound by

9

statute of limitations defense applying to insured's claim against tortfeasor in context

of first-party personal injury protection in auto liability policies). However, in the present

case, Atkins (the injured worker) and Morgan (the third-party tortfeasor) settled Atkins'

claims without NY Marine's (the insurer) knowledge or consent. While nothing in K.S.A.

44-504 requires the employer/insurer to consent to the settlement between the injured

worker   and   the   third-party   tortfeasor,   the   statue   clearly   recognizes   the

employer/insurer's right to be made aware of and participate in such settlement.

K.S.A. 44-504(b) ("The employer shall receive notice of the action, have a right to

intervene and may participate in the action."). Indeed, in *Jerby*, the Court of Appeals

of Kansas reviewed the out-of-court settlement between the injured worker and the

third-party tortfeasor to determine whether the settlement was structured so as to

purposefully exempt the settlement from the reach of the workers compensation

insurer's statutory lien. *Jerby*, 138 P.3d at 209 (remanding the case for the trial court

to review the extent of the release to determine whether the settlement proceeds were

duplicative of workers compensation benefits received).

¶13   Relevant to our inquiry, an employer or insurer's subrogation right in the context

of workers' compensation has been described as follows:

> Since the rights of an employer asserting a claim as subrogee of an
> injured employee against a third-party tortfeasor are only those derived
> through the employee, the injured employee's settlement of the claim
> and release of the tortfeasor from liability may extinguish the employer's
> ability to pursue a subrogation claim against the third party. According to

some cases, however, a settlement between an employee and a third person, without the consent of the employer or its insurer, does not destroy or otherwise affect, the right of the employer or insurer to a recovery against a third person. Thus, a settlement reached by a third-party tortfeasor and an injured employee without the consent of the employer does not work to extinguish the employer's subrogation rights. The employer's right to have questions of liability and recovery adjudicated remains, particularly where the settlement was for less than its liability to the employee under the workers' compensation act. 101 C.J.S. WORKERS' COMPENSATION §1822 (April 2016 Update) (footnotes omitted).

Relatedly, Kansas law provides, in subrogation cases outside of the workers' compensation arena, that "no act of the insured releasing the wrongdoer from liability can defeat the rights of the insurer when such release is given without the knowledge or consent of the insurer, and when the wrongdoer has full knowledge . . . as to the insurer's right of subrogation under the contract." *City of New York Ins. Co. v. Tice*, 152 P.2d 836, 840 (Kan. 1944). Further, when describing the purpose and effect of the Third-Party Tort Action statute, the Supreme Court of Kansas has stated "[t]he statute was not enacted to relieve, alter or vary in any way the liability for the tort of the third-party wrongdoer." *Rumbaugh v. VonFeldt*, 378 P.2d 5, 8 (Kan. 1963) (analyzing the one-year limitation for the injured worker to bring the claim and finding that it did not alter the two-year statute of limitations on the tort cause of action).

¶14   Although recognizing the conflicting authority and the dearth of Kansas authority which directly answers the question at bar – whether an out-of-court settlement between the injured worker and the third-party tortfeasor of which the subrogated

11

insurer was not aware and to which it did not consent can cut off the subrogated

insurer's right to recover from the third-party tortfeasor – we find that such a

settlement cannot extinguish the subrogated insurer's right to recover when the

tortfeasor knew of the insurer's subrogation right. Accordingly, the questions of fact

related to when Morgan and his insurer learned that Atkins had filed a workers

compensation claim were correctly submitted to the jury.[4]

## B. The Preliminary Order Statute – K.S.A. 44-534a

¶15   While we have answered the question regarding the effect of the settlement,

Morgan argues NY Marine did not have a valid subrogation claim under Kansas law for

other reasons as well. First, he argues that because the issue of compensability had

not been finally adjudicated in the workers compensation court (and is still pending on

appeal), NY Marine's claim was not ripe for judicial review. Second, he argues that NY

Marine's subrogation interest was not created until NY Marine actually made

payments to Atkins on April 23, 2010, not when the Preliminary Order was entered

February 24, 2010. Because payments were not made until after the settlement was

---

[4]   The record shows State Farm became aware of Atkins' workers compensation case April
6, 2010 and that State Farm received the release signed by Atkins April 21, 2010. We agree with NY
Marine that the date the release was signed by Atkins and returned to State Farm is the date to
measure when the release was effective as opposed to when Atkins agreed to the terms of the release
and settlement. See Mercury Inv. Co. v. F.W. Woolworth Co., 1985 OK 38, ¶9, 706 P.2d 523 ("The
parol evidence rule provides that unless fraud or mistake is involved pre-contract negotiations and oral
discussions are merged into, and superseded by, the terms of the executed written agreement....
[W]here a contract is complete in itself, and, as viewed in its entirety, is unambiguous, its language
is the only legitimate evidence of what the parties intended.").

completed, no subrogation interest arose. And, finally, Morgan argues the sole remedy

for an employer/insurer who made payments pursuant to the Preliminary Order

Statute, K.S.A. 44-534a, is to seek reimbursement from the statutory fund. We reject

these arguments.

¶16   The Preliminary Order Statute, K.S.A. 44-534a, allows an injured employee

awaiting a final compensation award to seek a hearing before an ALJ to obtain a

preliminary finding of compensability and a preliminary award of worker's

compensation benefits.  K.S.A. 44-534a(a).  This summary procedure benefits the

injured worker by preventing him from "becom[ing] destitute or succumb[ing] to

pressures for a quick settlement while awaiting a final decision in his case." *Stout v.*

*Stixon Petroleum*, 836 P.2d 1185, 1192 (Kan. Ct. App. 1992). The Third-Party Tort

Action statute states that "[i]n the event of recovery [from the third-party tortfeasor].

. . the employer shall be subrogated to the extent of the **compensation and medical aid**

**provided** by the employer to the date of such recovery and shall have a lien therefor

against the entire amount of such recovery" excluding claims for loss of consortium.

K.S.A. 44-504(b) (emphasis added).  The Third-Party Tort Action further provides

"'compensation and medical aid' includes all payments of medical compensation,

disability compensation . . . and any other payments made or provided pursuant to the

workers compensation act." K.S.A. 44-504(f). We view payments ordered pursuant to

the Preliminary Order Statute, regardless of when the payments were actually

13

tendered, as falling within this definition.  Accordingly, the subrogation interest of Webcon (Atkins' employer) arose as soon as it was ordered to make worker's compensation payments to Atkins pursuant to the Preliminary Order entered February 24, 2010.  By virtue of K.S.A. 44-532(a), NY Marine was subrogated to all of the rights and duties of Webcon because it was the party paying compensation.

¶17   Payments made by an employer or its insurer pursuant to the Preliminary Order Statute create the possibility that benefits will be paid for an injury which is later found not to be compensable under the Act.  See K.S.A. 44-534a(a)(1) (providing that an appeal from a preliminary order shall not stay the payment of compensation).  When this happens, the employer (or its insurance carrier) "shall be reimbursed from the workers compensation fund established in K.S.A. 44-566a. . . ."  *Id.* 44-534a(b) (providing if, upon a full hearing, the amount of compensation paid is to be reduced or totally disallowed, the employer and the employer's insurance carrier shall be reimbursed from the workers compensation fund established in K.S.A. 44-566a). Morgan argues this reimbursement is the exclusive remedy for NY Marine in the event Atkins' injuries are ultimately determined to not be compensable under the Act.  *See Kimber v. U.S.D. No. 418*, 944 P.2d 169, 171 (Kan. Ct. App. 1997).  We disagree.

¶18   First, *Kimber*, can be distinguished as it did not involve a third-party tortfeasor but instead only addressed reimbursement among employers of an injured worker who was injured at both jobs.  Second, permitting reimbursement from the statutory fund

to be the exclusive remedy for an employer/insurer to recover payments made pursuant to a preliminary order in situations involving a third-party tortfeasor would allow the wrongdoer to escape liability. We doubt this was the intent of the Kansas legislature, especially considering the terms of K.S.A. 44-504(e) which provides that "[i]n any case under the [Act] in which the workers compensation fund has paid or is paying compensation, the workers compensation fund is hereby subrogated to the rights of the employer under this section and shall have all the rights of subrogation . . . which are granted to the employer by this section."

¶19    We also find no support for Morgan's position that NY Marine's case was not ripe for judicial review because a final decision on the compensability of Atkins' injuries has not been rendered. NY Marine made payments to Atkins pursuant to the Preliminary Order, thus giving rise to its subrogation interest regardless of whether Atkins' injury is ultimately compensable under the Act. We also note that the damages NY Marine requested were a specific sum equal to the amount of compensation and medical benefits aid provided to Atkins as of a date certain.

## C. Conclusion

¶20    Because we conclude NY Marine was able to bring its subrogation claim against Morgan directly and that such claim was justiciable, the trial court did not err in refusing to grant Morgan's motion for directed verdict or motion JNOV. Additionally, we reject Morgan's argument the trial court incorrectly instructed the jury on these issues.

¶21   "A judgment will not be disturbed on appeal unless it appears reasonably evident that the jury was misled by the allegedly erroneous instruction. By statute an appellate court may not disturb a judgment for misdirection of the jury in the absence of a miscarriage of justice or a substantial violation of the complaining party's constitutional or statutory rights. We have oft stated that the test upon review of an instruction urged as improperly given or refused is whether there is a probability that the jury was misled into reaching a result different from that which would have been reached but for the error." *Myers v. Missouri Pacific R. Co.*, 2002 OK 60, ¶29, 52 P.3d 1014 (footnotes omitted).  Here, the jury was accurately instructed on whether the release obtained from Atkins extinguished NY Marine's action against Morgan.  The jury was also accurately instructed to date the release as of the date it was signed and not the earlier date of when Atkins agreed to its terms. And, finally, we find no indication that the jury was misled by the instruction that everyone is presumed to know the law.

II.   **NY MARINE IS NOT LIMITED TO RECOVERING $100,000**

¶22   Morgan argues any subrogation claim NY Marine had was limited to the $100,000 paid to Atkins in settlement and that the trial court erred by not issuing an order of remittitur reducing the jury's award to this amount.  We disagree.  First, as discussed in part I, *supra*, limiting NY Marine's subrogation claim to $100,000 would, in practice, allow the release and settlement to bind it.  We disagree with that result under the specific facts of this case.

16

¶23   To the extent Morgan argues NY Marine failed to perfect its lien, we disagree.

First, the subrogation lien described in K.S.A. 44-504(b) arises automatically. *Smith v.*

*Russell*, 58 P.3d 698705 (Kan. 2002) ("[T]here is no statutory requirement that [the

subrogated insurer] file a notice of lien to be subrogated to recovery from a third-party

and that such subrogation and creation of a lien occurs automatically under K.S.A. 44-

504(b)"). Second, NY Marine was not filing suit to simply enforce its lien. Such case

would necessarily involve Atkins. Rather, NY Marine brought an action to enforce its

full rights to subrogation and, effectively, set aside the settlement as applied to it.

Normally, a subrogated insurer cannot bring its own claim against the wrongdoer, but,

so limiting the insurer's rights under the specific facts of this case would allow the

injured worker and third-party tortfeasor to settle around the subrogated insurer without

notice of such pending settlement. We cannot agree with that result. Accordingly, NY

Marine was not limited to recovering $100,000, and the trial court did not err by failing

to issue an order of remittitur.

## III.  THE TRIAL COURT DID NOT COMMIT ERROR BY REFUSING TO ALLOW A CONTINUANCE FOR MORGAN TO COMPEL THE TESTIMONY OF ATTORNEY BRETZ

¶24   Morgan argues the trial court erred by refusing to continue the trial until it could

compel the testimony of Attorney Bretz which he claims was essential to his defense

that the release bound NY Marine. However, the record shows Morgan did very little

towards obtaining the cooperation of Attorney Bretz until the eve of trial. "The granting

17

or refusing of a continuance is within the sound discretion of the trial court and refusal to grant a continuance does not constitute reversible error unless an abuse of discretion is shown." *Clark v. Stowell*, 1957 OK 160, ¶12, 315 P.2d 269. An "abuse of discretion" is found when the trial court makes "a clearly erroneous conclusion and judgment, against reason and evidence." *Hull v. Hull*, 2000 OK CIV APP 88, ¶3, 11 P.3d 222 (quoting *Abel v. Tisdale*, 1980 OK 161, 619 P.2d 608). "A continuance based on the absence of a witness or of evidence expected to be given of him is properly refused where the applicant fails to use due diligence to procure the witness or obtain his testimony by deposition." *Id.* at ¶5 (quoting *Estate of Katschor*, 1975 OK 159, 543 P.2d 560). The record supports NY Marine's position that Morgan did not take any meaningful steps to secure Attorney Bretz's testimony until after the November 1, 2013 discovery deadline had passed and that most of the work Morgan did towards compelling his testimony took place in the week or two before trial. The trial court did not abuse its discretion by refusing to continue the trial based on this chain of events.

## IV.   MORGAN CANNOT REDUCE THE JUDGMENT BY THE AMOUNT OF THE JOINT TORTFEASORS' SETTLEMENT

¶25   Relying on 12 O.S. §832(H), Morgan argues the judgment entered against him should be reduced by the amount the bars paid to NY Marine in settlement. "Under the provisions of §832(H) a claim to settlement proceeds' credit must be rested on the existence of other tortfeasors who are liable for the same injury as the settling party."

*Nichols v. Mid-Continent Pipe Line Co.*, 1996 OK 118, ¶17, 933 P.2d 272.  Here, the

bars' settlement was not presented as evidence at trial, so Morgan would had to have

proven the bars' "ghost-tortfeasor" liability. *Id.* at ¶19.  Based on a theory of dram-shop

liability, Morgan argues he presented undisputed evidence that he was visibly

intoxicated and that the bars continued to serve him alcohol when they knew or should

have known he was intoxicated.

¶26   However, our review of the record shows Morgan presented his own testimony

about the level of his intoxication and the testimony of his drinking companion about

how Morgan appeared to him.  No evidence was presented about what the bars knew

or should have known regarding Morgan's level of intoxication.  Where there is any

competent evidence reasonably tending to support a jury verdict, the appellate court

will affirm the verdict and the trial court's judgment based thereon.  *Nealis v. Baird*,

1999 OK 98, ¶47, 996 P.2d 438.  Accordingly, we find the trial court did not err in

refusing to reduce the judgment against Morgan by the amount of the bars' settlement

with NY Marine.

## V.   THE TRIAL COURT DID NOT ERR IN REFUSING TO REDUCE OR WAIVE THE APPEAL BOND

¶27   Morgan presented little argument or authority to support his position that the

trial court erred by refusing to reduce or waive the appeal bond.  "Assignments of error

presented in the [appellate] brief, unsupported by convincing argument or authority, will

not be considered on appeal unless apparent without further research that they are well taken. *Fleming v. Baptist General Convention of Okla.*, 1987 OK 54, ¶24 742 P.2d 1087 (citations omitted). The crux of Morgan's presentation of this error seems to be that he was wrongfully subjected to litigation because of the release signed by Atkins. For all the reasons previously discussed in this opinion, we disagree.

¶28   The judgment of the trial court IS AFFIRMED.

BUETTNER, V.C.J., P.J., concurs.

GOREE, J., concurring in part, and dissenting in part:

¶29   Section 44-504(b) creates a subrogation lien. The lien arises in the event of a recovery by the injured worker from the third-party. The employer "shall have a lien therefore against the entire amount of such recovery." *Id.* Appellee's lien attached to the $100,000 recovery Atkins obtained from Morgan. I disagree that the lien statute authorizes a judgment beyond the sum recovered in the settlement.

20



**ORIGINAL**   

FILED
SUPREME COURT
STATE OF OKLAHOMA

FEB 2 1 2017

MICHAEL S. RICHIE
CLERK OF
THE APPELLATE COURTS

## IN THE SUPREME COURT OF THE STATE OF OKLAHOMA

**TUESDAY, FEBRUARY 21, 2017**

THE CLERK IS DIRECTED TO ENTER THE FOLLOWING ORDERS OF THE COURT:

113,008    New York Marine and General Insurance Company, as Subrogee for Kansas Building Industry Worker's Compensation Fund v. George Andrew Morgan, an individual et al
**Petition for certiorari is denied.**
CONCUR:   Combs, C.J., Gurich, V.C.J., Kauger, Watt, Winchester, Edmondson, Colbert and Reif, JJ.
NOT PRESENT & NOT PARTICIPATING:   Wyrick, J.

113,407 (cons.w/113,596)
Asset Acquisition Group, L.L.C. v. Elbert Kirby
**Petition for certiorari is denied.**
CONCUR:   Combs, C.J., Gurich, V.C.J., Kauger, Watt, Winchester, Edmondson, Colbert and Reif, JJ.
NOT PRESENT & NOT PARTICIPATING:   Wyrick, J.

113,724    Thomas Fox v. Tim Fox et al
**Petition for certiorari is denied.**
CONCUR:   Combs, C.J., Gurich, V.C.J., Kauger, Watt, Winchester, Edmondson, Colbert and Reif, JJ.
NOT PRESENT & NOT PARTICIPATING:   Wyrick, J.

114,092    Monica Rachelle Nilles Tutt v. William G. Nilles et al
**Petition for certiorari is denied.**
CONCUR:   Combs, C.J., Gurich, V.C.J., Kauger, Watt, Winchester, Edmondson, Colbert and Reif, JJ.
NOT PRESENT & NOT PARTICIPATING:   Wyrick, J.

Rec'd (date) 2-21-17
Posted
Mailed
Distrib
Publish _____ yes  X  no

**CHIEF JUSTICE**

**EXHIBIT**

**7**

## IN THE SUPREME COURT OF THE STATE OF OKLAHOMA

New York Marine and General Insurance Company, as
Subrogee for Kansas Building Industry Worker's
Compensation Fund,
Plaintiff/Appellee,

vs.

George Andrew Morgan, an Individual,
Defendant/Appellant,

and

300 Club, Inc. and OLLI, Inc.,
Defendants.

)
) Supreme Court Case Number: 113008
)
) Lower Court Case Number: CJ-2011-188
)
) Lower Court: Garfield County District Court
)

**FILED**
**GARFIELD COUNTY, OKLA**

**MAR 2 3 2017**

JANELLE M. SHARP
COURT CLERK
BY _Vickie Tarohy_
DEPUTY COURT CLERK

## MANDATE

On the 21st day of March , 2017 , the Honorable Chief Justice Douglas L. Combs of the Oklahoma Supreme Court
ordered the Clerk of the Supreme Court to issue mandate, pursuant to the rules of the Oklahoma Supreme Court, in
the above-styled appeal from the Garfield County District Court.

On appeal, the following judgment was entered on June 10th, 2016:

### AFFIRMED

Costs of $0.00 are taxed and allowed pursuant to Section 978 of Title 12 of the Oklahoma Statutes and the rules of the
Oklahoma Supreme Court.

Therefore, the Garfield County District Court is directed to enter of record the above judgment and to issue process or
take further action as required by the order or opinion issued in this appeal.

MICHAEL S. RICHIE
Clerk of the Appellate Courts

By Tara Stumbaugh, Deputy



EXHIBIT
tabbies
8