# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| GEORGE ANDREW MORGAN, | ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | Case No. CIV-17-622-D |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | ) ) ) ) | |
| Defendant. | ) | |

## ORDER

This matter comes before the Court on Defendant State Farm Mutual Automobile Insurance Company's ("State Farm") Motion for Summary Judgment [Doc. No. 20]. Plaintiff George Andrew Morgan ("Morgan") filed a Preliminary Objection [Doc. No. 31]. State Farm replied [Doc. No. 32]. Plaintiff filed an Amended Objection [Doc. No. 36] and State Farm has filed an Amended Reply. [Doc. No. 39].[1]

This lawsuit arises from State Farm's failure to protect a workers compensation carrier's statutory subrogation/lien interest and failure to pay the resulting judgment against its insured.

## UNDISPUTED MATERIAL FACTS

State Farm insured Morgan under an automobile insurance policy ("Policy") which provided liability coverage limits of $100,000.00. The Policy obligates State Farm to pay

---

[1] Morgan was granted leave to file an amended response to State Farm's Motion after an additional deposition was taken. Order [Doc. No. 33] at 6. State Farm subsequently filed an Amended Reply [Doc. No. 39]. Both amended filings supersede the original.

"damages an insured becomes legally liable to pay because of . . . bodily injuries." Motion, at 3 (quoting Policy [Doc. No. 20-1]). On June 16, 2009, Morgan left a bar intoxicated. Despite his intoxication, Morgan chose to operate a vehicle and struck pedestrian Jesse Atkins as he was crossing the street. Jesse Atkins was a Kansas resident in Oklahoma for a job with a Kansas company. After striking Mr. Atkins, Morgan left the accident scene. Mr. Atkins was seriously injured and underwent extensive medical treatment totaling over two million dollars in medical expenses. Morgan subsequently pled no contest to charges of: (1) driving under the influence causing great bodily injury; and, (2) leaving the scene of an injury accident. Morgan received a suspended sentence but was eventually incarcerated.[2]

State Farm received notice of the accident on August 3, 2009, and began its investigation. On September 10, 2009, State Farm sent a letter to Morgan informing him that "it is possible the injuries claimed against you may be in excess of the protection afforded by the policy." Letter from Todd Towe to Morgan [Doc. No. 20-11]. The letter went on to state that State Farm "will do everything possible to protect you within those limits, however, you may be held personally responsible for any judgment in excess of those limits." *Id*.

On February 19, 2010, Mr. Atkins' attorney provided Michael Feldman, State Farm Claim Representative, with Mr. Atkins' medical bills. These bills totaled $2,119,506.30.

---

[2] Morgan states the facts relating to his conviction and incarceration relating to the accident are irrelevant but does not dispute them. Therefore, State Farm's "Undisputed Material Fact No. 3" is deemed admitted.

Mr. Feldman then requested authority to offer the policy limits of $100,000.00 to settle Mr. Atkins' claim against Morgan. This request was granted and Mr. Feldman made the policy limits offer on February 25, 2010. The offer was accepted with instructions to make the settlement check out to "Jesse Atkins and Medicaid." Letter from Bretz to Feldman [Doc. No. 20-18]. The check was issued and mailed by State Farm to Mr. Atkins' attorney on March 30, 2010.

Mr. Atkins' attorney informed State Farm on April 6, 2010, that Mr. Atkins had filed a workers compensation claim against Mr. Atkins' employer and its workers compensation carrier, Kansas Building Industry Workers Compensation Fund ("Fund"). Mr. Atkins' attorney further informed State Farm that workers compensation would pay all of Mr. Atkins' medical bills. This was State Farm's first notice that workers compensation was involved. On the same date, Mr. Atkins' attorney provided State Farm with a copy of the workers compensation "Order for Compensation" which stated that Mr. Atkins' medical treatment was covered by workers compensation. No lien had yet been asserted on behalf of the Fund. On April 22, 2010, State Farm received a release of all claims from Mr. Atkins.

The Order for Compensation included a preliminary finding that Mr. Atkins' claim was covered by workers compensation. It was not a final order. The Fund ultimately appealed on the basis that Mr. Atkins was not in the course of his employment when he was struck by Morgan and, therefore, was not entitled to workers compensation.

On April 21, 2010, State Farm received Mr. Atkins' signed release discharging any claims he might have against Morgan as a result of the accident. Fifteen months later, on

3

June 15, 2011, New York Marine ("NYM"), as the subrogee for the Fund, brought suit against Morgan in Garfield County, Oklahoma. Morgan first learned of NYM's claims in January 2012. Complaint at ¶ 19; Motion, Exhibit 28, Claim File Activity Log [Doc. No. 20-28]. Morgan was served on January 6, 2012. Amended Objection at 6; Amended Objection, Exhibit Claim File Activity Log [Doc. No. 20-28].[3] State Farm learned of the lawsuit on January 30, 2012. State Farm retained legal counsel to represent Morgan in the lawsuit. Morgan also retained his own counsel. Ultimately, the Garfield County judge denied a motion for summary judgment filed on behalf of Morgan as to NYM's subrogation claims.

Prior to trial, State Farm offered to pay NYM $100,000.00, the same amount of the policy limits already paid to Atkins. NYM rejected the offer. NYM counteroffered to settle for $700,000.00. The case went to trial on February 26, 2014. The jury returned a verdict in favor of NYM and against Morgan in the amount of $844,865.89 on February 27, 2014. Judgment was entered on April 8, 2014. After the judgment was entered, State Farm continued to attempt negotiations with NYM and again offered NYM the policy limits of $100,000.00 for a release of the judgment against Morgan. The offer was rejected. State Farm continued to defend Morgan through post-trial motions and appeal.

---

[3] Morgan represented to State Farm that he was served on January 6, 2012, and cites to the claim activity log notating the January 6, 2012, service date in his Amended Objection. Amended Objection at 6; Amended Objection, Exhibit 4, Claim Activity Log [Doc. No. 36-4] at 53, 56. Therefore, even if Morgan was not actually served on that date, he admits he had notice of the Garfield County case on January 6, 2012.

4

In December 2014, the Kansas Workers Compensation Appeals Board ruled on the Fund's appeal of Mr. Atkins' workers compensation claim. The Board found that Mr. Atkins was not entitled to workers compensation because he was not in the course and scope of his employment when he was struck by Morgan's vehicle. This ruling is pending further appeal in Kansas.

On June 10, 2016, the Oklahoma Court of Civil Appeals affirmed the Garfield County judgment in favor of NYM. The Oklahoma Supreme Court denied certiorari on February 21, 2017. The mandate was issued on March 23, 2017. Morgan filed the instant action on May 23, 2017.

**STANDARD OF DECISION**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Universal Underwriters Ins. Co. v. Winton*, 818 F. 3d 1103, 1105 (10th Cir. 2016). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way," and "[a]n issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

The Court's inquiry must be whether the evidence, when viewed "through the prism of the substantive evidentiary burden," *Anderson*, 477 U.S. at 254, "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party

5

must prevail as a matter of law." *Id.* at 251-52. Although the Court views all facts in the light most favorable to the nonmoving party at the summary judgment stage, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249 (citations omitted).

"[I]n opposing a motion for summary judgment, the nonmoving party 'cannot rest on ignorance of facts, on speculation, or on suspicion.'" *Bird v. W. Valley City*, 832 F.3d 1188, 1199 (10th Cir. 2016) (quoting *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988)). The nonmoving party "must present affirmative evidence in order to defeat a properly supported motion for summary judgment. This is true even where the evidence is likely to be within the possession of the defendant, as long as the plaintiff has had a full opportunity to conduct discovery." *Anderson*, 477 U.S. at 257.

## DISCUSSION

State Farm asserts it is entitled to summary judgment for the following reasons: (1) Morgan's claims are barred by the applicable statutes of limitations; (2) the undisputed facts demonstrate it did not breach its contract with Morgan; (3) the undisputed facts demonstrate State Farm did not breach the duty of good faith and fair dealing; and, (4) Morgan's claim for punitive damages fails as a matter of law. Because the Court finds Morgan's claims are barred by the statute of limitations, there is no need to address State Farm's other grounds for summary judgment.

"A federal court sitting in diversity applies state law for statute of limitations purposes" and "state law determines when an action is commenced for statute of limitations purposes." *Burnham v. Humphrey Hospitality Reit Trust, Inc.*, 403 F.3d 709, 712 (10th

Cir.2005) (citing *Guaranty Trust Co. v. York*, 326 U.S. 99, 109–10, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), and *Walker v. Armco Steel Corp.*, 446 U.S. 740, 751, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980)). Therefore, Oklahoma law supplies the rules of decision regarding timeliness. This is an affirmative defense on which State Farm bears the burden of proof. *See MBA Commercial Const., Inc. v. Roy J Hannaford Co.,* 818 P.2d 469, 472 (Okla.1991).

A. **Breach of Duty of Good Faith and Fair Dealing.**

Both parties agree that the statute of limitations under Oklahoma law for the tort of breach of the duty of good faith and fair dealing is two years. Okla. Stat. tit. 12 § 95(A)(3). The parties disagree on when that statute of limitations began to run in this case. Morgan argues his bad faith claim is one for excess judgment as a result of State Farm's failure to protect a workers' compensation interest, and therefore the statute of limitations commenced on March 23, 2017, when appeals were exhausted on the state court judgment in favor of NYM. Amended Objection at 19. State Farm contends that the bad faith claim is not an excess judgment claim and the statute of limitations began to run from the time of the alleged offending conduct. State Farm asserts that all such conduct occurred more than two years prior to May 23, 2015. Motion at 17, 19.

As mentioned, Morgan characterizes State Farm's alleged bad faith as having "failed to protect a workers' compensation interest resulting in an excess judgment." Amended Objection at 19. However, all of the cases to which Morgan points in support of the later running of the statute involve claims for breach of the duty of good faith and fair dealing in which the insurer "***unreasonably refused to accept*** a settlement offer within policy limits" resulting in the entry of a judgment in excess of policy limits against the

7

insured. *Torrez v. State Farm Mut. Auto. Ins. Co.*, 705 F.2d 1192, 1195 (10th Cir. 1982) (emphasis added). In fact, in all of the cases cited by Morgan, the insurer "refused to settle" when given an opportunity to do so. *See Torrez*, 705 F.2d at 1194 (insurer refused to accept offer of settlement for policy limits in fatal car accident); *Wirtz v. State Farm Mut. Auto. Ins. Co.*, CIV-08-1062-F, 2009 WL 2163617, at *5 (W.D. Okla. July 13, 2009) (insurer refused offer to settle for policy limits without release from subrogee); *Taylor v. State Farm Mut. Auto. Ins. Co.*, 185 Ariz. 174, 175, 913 P.2d 1092, 1093 (1996) (injured parties offered to settle for the policy limit but insurer refused); *Boling v. New Amsterdam Cas. Co.*, 1935 OK 587, 173 Okla. 160, 46 P.2d 916, 916, 917 (insurer refused to settle within policy limits when opportunity arose prior to trial and again after an excess judgment was entered). Moreover, none of these cases involve any other underlying breach of duty and none involve an insurer's bad faith failure to protect a subrogee's interest.

Morgan does not dispute that State Farm offered to settle for full policy limits twice before any excess judgment was entered -- once to Mr. Atkins, which was accepted, and later to NYM prior to trial on its subrogation claims. Nor does Morgan dispute that State Farm attempted to settle for full policy limits a third time after the judgment was entered in favor of NYM in state court. State Farm's undisputed willingness, and multiple attempts, to settle for policy limits precludes characterization of this case as an excess judgment case. Therefore, the statute of limitations did not begin to run on March 23, 2017, when appeals were exhausted on the state court judgment in favor of NYM. Instead, the statute of limitations began to run upon accrual of Morgan's cause of action, viz., "when

the insurer breached the implied duty to deal fairly and in good faith with its insured."[4] *Trinity Baptist Church v. GuideOne Elite Ins. Co.*, 654 F.Supp.2d 1316, 1325-26 (W.D. Okla. 2009) (citing *Lewis v. Farmers Ins. Co.,* 681 P.2d 67, 70 (Okla.1983); *see Zewdie v. Safeco Ins. Co. of Am.*, 304 F. Supp. 3d 1101, 1112 (W.D. Okla. 2018) ("In Oklahoma, the statute of limitations 'begins to run when the cause of action accrues' and '[a] cause of action accrues when a litigant could first maintain an action to a successful conclusion.'") (quoting *Stephens v. Gen. Motors Corp.*, 905 P.2d 797, 799 (Okla. 1995) and *Lee v. Phillips & Lomax Agency, Inc.*, 11 P.3d 632, 634 (Okla. 2000)).

The undisputed facts establish that Morgan's alleged bad faith claim arises not from an excess judgment but from "State Farm's failure to fulfill its duty to ensure [the] subrogation claim of New York Marine was protected." Complaint at ¶ 38; Amended Objection at 15, ¶ 27-32 ("It is admitted that NYM sued Morgan due to State Farm's improper action and failure to protect Morgan."). The "improper action" alleged by Plaintiff is State Farm's settlement with Mr. Atkins without notifying or obtaining a release from NYM. Complaint at ¶¶ 16, 17. The date of the settlement with Mr. Atkins is disputed. State Farm asserts the settlement was complete on March 30, 2010, when the settlement check was mailed to Mr. Atkins' attorney. Motion, Undisputed Fact No. 17. Morgan contends it occurred on April 22, 2010, when Mr. Atkins' release was received. Amended Objection, Disputed Fact No. 17.

---

[4] State Farm, of course, disputes that it breached this duty.

Regardless of this dispute, "Oklahoma follows the discovery rule allowing limitations in tort cases to be tolled until the injured party knows or, in the exercise of reasonable diligence, should have known of the injury" or "would have discovered the act which gives rise to the claim." *Resolution Trust Corp. v. Grant,* 901 P.2d 807, 813 (Okla.1995); *Redwine v. Baptist Med. Ctr. of Okla., Inc.,* 679 P.2d 1293, 1295 (Okla.1983). "The discovery rule applies to the two-year statute of limitations applicable to bad faith claims." *Austin v. Nat'l Gen. Assurance Co.*, CIV-10-515-R, 2010 WL 11562063, at *2 (W.D. Okla. Sept. 27, 2010) (citing *Miller v. Liberty Mutual Fire Insurance Company*, 191 P.3d 1221, 1227 (Okla. Civ. Ap. 2008), *cert. denied* (Okla. 2008) (citing *Funnell v. Jones*, 737 P.2d 105, 107 (Okla. 1985)). "Thus, the two-year limitations period for filing a bad faith claim is tolled until such time as the party knows or should have known the factual basis for a bad faith claim." *Id*.

The parties agree that the "first time Plaintiff Morgan was made aware there were additional claims pending against him that had not been protected by Defendant State Farm was when he was sued by New York Marine in the District Court of Garfield County, Case No. CJ-2011-188." Complaint at ¶ 19; Motion, Exhibit 28 Claim File Activity Log, [Doc. No. 20-28]; Amended Objection at 6. Morgan was served with, or received notice of, NYM's lawsuit on January 6, 2012. Motion, Exhibit 28; Amended Objection at 19; Amended Objection, Exhibit 4 at 53, 56. Thus, it is undisputed that Morgan had notice of State Farm's alleged breach of duty to act in good faith on January 6, 2012. Complaint at ¶19. Moreover, Morgan does not deny that after he lost the motion for summary judgment in state court on the issue of subrogee rights, his personal counsel informed State Farm via

email that he recognized "[b]ad faith stuff: settlement, exposure to double liability, etc.," and that he planned to "set up a case for bad faith" on December 11, 2013. Motion at 9 (Undisputed Fact No. 33), 9-10 (Undisputed Fact No. 34); Davis Email [Doc. No. 20-34]; Amended Objection, Claim File [Doc. No. 36-4] at 37 (acknowledging receipt of forwarded email from Morgan's personal attorney).

Morgan was aware of, or should have discovered with the "exercise of reasonable diligence," all the facts on which his bad faith claim was based on January 6, 2012. *Resolution Trust Corp.*, 901 P.2d at 813. Therefore, the two-year statute of limitations on Morgan's claim for breach of the duty of good faith and fair dealing began to run on January 6, 2012. *See Zewdie v. Safeco Ins. Co. of Am.*, 304 F. Supp. 3d 1101, 1112 (W.D. Okla. 2018) (finding that statute of limitations began to run no later than when plaintiff had knowledge of the facts upon which he based his bad faith claim). A plaintiff is "charged with having knowledge of those facts which ought to have been discoverable in the exercise of reasonable diligence" and the "statute of limitations is not tolled simply because a plaintiff 'negligently refrain[s] from prosecuting inquiries plainly suggested by the facts.'" *Ake v. Cent. United Life Ins. Co.*, CV-17-937-R, 2018 WL 5986756, at *3 (W.D. Okla. Nov. 14, 2018) (quoting *Blue v. Universal Underwriters Life Ins. Co.*, 612 F. Supp. 2d 1201, 1203 (N.D. Okla. 2009) (internal quotation omitted)); *Blue v. Universal Underwriters Life Ins. Co.*, 612 F. Supp. 2d 1201, 1204 (N.D. Okla. 2009) ("It is irrelevant whether the plaintiff understood that the defendant's actions constituted a [legal cause of action] as long as the plaintiff knew of the facts which could give rise to such a claim.")

(quoting *Chasteen v. UNISIA JECS Corp.,* 216 F.3d 1212, 1217 (10th Cir.2000)). Therefore, the deadline for Morgan to file bad faith claim was January 7, 2014.

For these reasons, the Court finds that Morgan's bad faith claim is untimely as having been filed more than three years after Morgan had notice of the facts upon which he bases his claim.[5]

**B. Breach of Contract**

The parties agree that the statute of limitations for a claim based on breach of a written contract is five years. Okla. Stat. tit. 12 § 95. Again, the parties disagree on when the limitations period began to run. State Farm contends the period began at the time of breach which is alleged to have occurred in 2010, more than five years before Morgan filed this action. Morgan asserts the statute did not begin to run until all appeals were complete on the state court judgment. Amended Objection at 21.

Oklahoma law provides that the statute of limitations "begins to run when a breach of the insurance contract occurs." *Wille v. Geico Cas. Co,* 2 P.3d 888, 888 (Okla. 2000). As discussed above, it is undisputed that the conduct at the center of Morgan's claim is "State Farm's failure to protect NYM's lien/subrogation interest," and that this occurred in 2010 when State Farm negotiated a settlement with Atkins and failed to obtain release of any workers compensation claims. Motion at 5-6, 8; Amended Objection at 10, 12, 15.

---

[5] The Court notes that even if the statute of limitations were calculated from the date of the December 11, 2013, email from Morgan's personal attorney to State Farm affirmatively acknowledging recognition of a bad faith claim, Morgan's action would still be untimely. Calculating the statute of limitations from the December 11, 2013 email, the deadline would have been December 12, 2015, nearly twenty months after the jury returned its verdict in favor of NYM.

However, Oklahoma courts have applied equitable tolling to "extend[] the statute of limitations if the plaintiff did not have and could not with due diligence obtain the information necessary for bringing suit within the limitations period." *Roemer v. State Farm Fire & Cas. Co.*, 06-CV-0663-CVE-PJC, 2007 WL 527863, at *2 (N.D. Okla. Feb. 14, 2007) (quoting *Thaxton v. Beneficial Mortgage Co. of Oklahoma,* 145 P.3d 124, 127 (Okla.Civ.App.2006)).

Morgan "became aware there were additional claims pending against him that had not been protected by Defendant State Farm when he was sued by NYM." Complaint ¶ 19. Morgan was served on January 6, 2012, and, with due diligence, could have obtained the information necessary to bring suit against State Farm at that time. Therefore, the statute of limitation on Morgan's breach of contract claim began to run on January 6, 2012, and expired January 7, 2017. Morgan's breach of contract claim is, thus, untimely, having been filed after January 7, 2017.

## C. The "No Action" Clause

Finally, Morgan argues that the "no action" clause in the Policy prohibits filing of any lawsuit against State Farm prior to appeals of any judgment awarding damages "an *insured* is legally liable to pay" or if there is any agreement between "the claimant and [State Farm]." Amended Objection at 21 (quoting Policy at 28) (emphasis in original). Morgan asserts that the "no action" clause tolled the statute of limitations until all appeals of NYM's judgment against him were complete. However, the Tenth Circuit has clearly held that its interpretation of Oklahoma law is that similar "no action" clause language "is intended to apply only to claims made by third parties." *Paul Holt Drilling, Inc. v. Liberty*

*Mut. Ins. Co.*, 644 F.2d 252, 254 (10th Cir. 1981). "The purposes of the no action clause are to prevent nuisance suits against the insurance company and to prevent an injured party or an insured from bringing the insurance company into the underlying litigation with possible resultant prejudice." *Id*. at 254. As a result, the Tenth Circuit rejected the plaintiff insured's contention in *Paul Holt* that the "no action" clause tolled the statute of limitations on a claim for failure to defend until completion of the underlying litigation by the injured party against the insured. *Id.*

> The "no action" clause at issue in *Paul Holt* required delay of suit:
>
> until the amount of the insured's obligation to pay shall have been finally determined, either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company.

*Id*. In this case, the "no action" clause similarly reads, in pertinent part, that legal action may not be brought against State Farm:

> until there has been full compliance with all the provisions of this policy. In addition, legal action may only be brought against *us* . . . after the amount of damages an *insured* is legally liable to pay has been finally determined by:
>
> (1) Judgment after an actual trial, and any appeals of that judgment if any appeals are taken; or
>
> (2) Agreement between the claimant and *us*.

Amended Objection, Exhibit 16 [Doc. No. 36-16], Policy at 28 (emphasis in original). The Tenth Circuit found that "[t]he wording of the clause itself supports the conclusion that it does not apply to the insureds' claims against the insurer." *Paul Holt Drilling, Inc.*, 664 F.2d at 254. This Court has likewise rejected an insurer's argument that the "no action" provisions in the policy precluded suit by an insured as such provisions are "designed to

14

preclude an action against the insurer by a third party, not the insured." *Trotter v. Am. Modern Select Ins. Co.*, 220 F. Supp. 3d 1266, 1270 (W.D. Okla. 2016) (quoting *Paul Holt Drilling, Inc.*, 664 F.2d at 254). The similarity of the language in the "no action" clause of the insurance policy at issue here with that in *Paul Holt* requires the same finding. Based on the Tenth Circuit's decision in *Paul Holt* and this Court's previous determination in *Trotter*, the "no action" clause does not apply to Morgan's claims and, therefore, does not toll the statute of limitations.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant State Farm's Motion for Summary Judgment [Doc. No. 20] is **GRANTED**. Judgment shall be entered in favor of Defendant State Farm.

**IT IS SO ORDERED** this 28th day of March 2019.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE